UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANGEL PLACE, formerly known as Angel Kirk-Miles,

    Petitioner,

v.

PAULA MYERS,

    Respondent.
_____

Case No. 3:18-cv-01667-MC

**OPINION AND ORDER**

MCSHANE, Chief Judge.

    Petitioner brings this federal habeas action pursuant to 28 U.S.C. § 2254 challenging her state court convictions for Conspiracy to Commit Murder and Conspiracy to Commit Robbery in the First Degree. Petitioner claims that trial counsel provided constitutionally ineffective assistance by failing to investigate the factual basis underlying Petitioner's no contest plea and failing to determine whether Petitioner had the mental capacity to enter into a conspiracy.

1 - OPINION AND ORDER

Petitioner also claims that her plea was unknowing and involuntary as a result of counsel's deficient performance and that she is actually innocent of the offenses. Petitioner did not present her federal claims to the Oregon courts, and she fails to establish cause and prejudice or her actual innocence to excuse the procedural default of her claims. Accordingly, the Petition is DENIED.

## BACKGROUND

On April 4, 2011, Ron Holliday was killed in Coos County, Oregon. Holliday was last seen getting into a car with Thomas Gunn and Jeffrey Cue after Holliday cashed his social security check at a WalMart. Resp't Ex. 118 at 8. Gunn and Cue were part of a "crew" who collected drug debts for Petitioner, a local drug dealer. Resp't 104 at 12. Petitioner believed that Holliday had "shorted" her on a drug deal and directed Gunn to steal Holliday's monthly social security benefits as a consequence. Resp't Ex. 104 at 12-13; Resp't Ex. 118 at 41, 84-86.

The three men drove into a forested area, and Gunn and Cue shot Holliday a total of seven times. Resp't Ex. 104 at 13. Gunn took cash and checks from Holliday's wallet and gave the money to Petitioner. *Id*. Ultimately, Gunn and Cue were charged with Aggravated Murder and Robbery in the First Degree, and Petitioner was charged with Felony Murder, Conspiracy to Commit Robbery in the First Degree, and Robbery in the First Degree. Resp't Exs. 102, 123; Pet'r Brief at 3 (ECF No. 61).

On June 30, 2011, Petitioner's counsel questioned whether Petitioner was competent to aid in her defense and filed a motion requesting that Petitioner be sent to Oregon State Hospital for evaluation. Resp't Exs. 124-26. Petitioner's counsel ultimately retained a psychologist to evaluate Petitioner and she eventually was deemed fit to proceed. Resp't Ex. 146. No further issues of competency were raised by Petitioner's counsel or the State.

On November 4, 2011, Petitioner and the State participated in a judicial settlement conference and reached a plea agreement. Petitioner agreed to plead no contest to an Amended Information alleging one count each of Conspiracy to Commit Felony Murder and Conspiracy to Commit Robbery in the first Degree. In return, the State agreed to dismiss charges of Felony Murder and Robbery in the First Degree and to forgo charging Petitioner with additional offenses discovered during the investigation of Holliday's murder. Resp't Ex. 103; Resp't Ex. 104 at 3-7, 14, 20-22; Resp't Exs. 141-42.

During the plea hearing, the trial court recited the conspiracy offenses charged in the Amended Information, as follows:

> On April 1, 2011, in Coos County, Oregon, that you did unlawfully, with the intent that conduct constituting the crime of Murder punishable as a felony be performed, agree with Thomas Allen Gunn and Jeffery Allen Cue to engage in the following conduct – to unlawfully and intentionally attempt to commit the crime of Robbery in the First Degree. In the course and furtherance of that crime the Defendant was attempting to commit, Thomas A. Gunn and Jeffery A. Cue caused the death of Ronald Holliday, another human being, who was not a participant of the crime.
>
> ***
>
> In other words, you agreed – you agreed to commit a Robbery, and in the course of that Robbery, Mr. Holliday was murdered.
>
> ***
>
> The second charge says that on that same date, in this County of Coos, with the intent that conduct constituting the crime of Robbery in the First Degree punishable as a felony be performed, agreed with Thomas Gunn and Jeffrey Allen Lee Cue, to engage in the following conduct – to unlawfully and intentionally, while in the course of attempting to commit. Theft, and with the intent of preventing and overcoming resistance to the Defendant's taking of property and retention of the property immediately thereafter the taking, threatened the immediate use of physical force upon Ronald Holliday, and used a dangerous weapon."

3 - OPINION AND ORDER

Resp't Ex. 104 at 10-11; *see also* Resp't Ex. 141. The State then provided the following factual basis to support the charges:

> [T]he facts, if established at trial, would be in Coos County, Oregon, on or about April 1, 2011, Ms. Kirk-Miles directed Mr. Thomas Gunn and Mr. Jeffery Lee Cue, to collect on a drug debt from Mr. Holliday. And Ms. Kirk-Miles admits that Mr. Gunn and Mr. Cue were part of her crew, and that they would collect on drug debts for her. She was aware of that fact that Mr. Gunn had an anger issue, and had problem[s] while collecting on debts previously. And while in her presence, and after having been directed to collect on her drug debt for her from Mr. Holliday, Mr. Gunn made the statement that he was going to kill Mr. Holliday the next day. But this was – as this was going on, Mr. Gunn and Mr. Cue were wearing firearms. A firearm that Mr. Cue used had been supplied to him by Ms. Kirk-Miles. He (sic) also supplied the ammunition that she (sic) used. When I say they were readying the firearms, I mean they were oiling them, cleaning them, loading them, and wiping them down for fingerprints. Ms. Kirk-Miles further directed Mr. Gunn to take all of Mr. Holliday's Social Security checks, which was more than the amount owed to her at that time. And in the course of that Robbery on April 1, 2011, Mr. Gunn and Mr. Cue shot Mr. Holliday a total of seven times. The medical examiner determined his manner of death was homicidal violence. He died from multiple gunshot wounds. And Ms. Kirk-Miles profited from that Robbery. And that Mr. Gunn kept some of the proceeds, and gave the majority of Mr. Holliday's checks to Ms. Kirk-Miles.

Resp't Ex. 104 at 12-13. Petitioner's counsel agreed that the State's factual basis would support Petitioner's convictions on the conspiracy charges. *Id*. at 13-14.

The trial court accepted Petitioner's waiver of indictment and plea and sentenced Petitioner to the stipulated sentence of consecutive 90-month terms of imprisonment, for a total sentence of 180 months. Resp't Exs. 101, 104 at 9, 14.[1] Petitioner directly appealed and appellate

---

[1] During the plea proceeding, Petitioner's counsel disputed the State's recitation of the 180-month stipulated sentence. Apparently, the settlement judge mistakenly represented to counsel that one of the 90-month sentences in the State's offer included eligibility for earned time credit. The State did not agree to a sentence with any potential reductions, and Petitioner ultimately agreed to those terms. *See* Resp't Ex. 104 at 3-7; Resp't Ex. 146.

Gunn eventually pled guilty to Aggravated Murder and was sentenced to life imprisonment with a thirty-year minimum. *State v. Gunn,* Case No. 11CR0494. Cue pled guilty to Murder and was sentenced to twenty five years of imprisonment. *State v. Cue,* Case No. 11CR0492.

**4 - OPINION AND ORDER**

counsel was "unable to identify any arguably meritorious issue to raise on appeal." Resp't Ex. 105 at 3. The Oregon Court of Appeals affirmed without opinion, and Petitioner did not seek direct review from the Oregon Supreme Court. Resp't Ex. 106.

Petitioner then sought post-conviction relief (PCR) in state court on grounds that: 1) trial counsel erroneously advised Petitioner to plead no contest to both conspiracy offenses; 2) Petitioner's plea was unknowing and involuntary because trial counsel represented that Petitioner would receive concurrent 90-month sentences; and 3) trial counsel failed to inform Petitioner that she was agreeing to a consecutive 90-month sentences with no eligibility for reductions or alternative incarceration programs. Resp't Ex. 108 at 3-4. With respect to the first claim, PCR counsel argued that trial counsel's erroneous advice to plead no contest arose from the failure to investigate the factual basis supporting the conspiracy charges. Resp't Exs. 109, 148. PCR counsel introduced several witness statements to support this claim, including declarations from Petitioner, Gunn, Tyre Hall, Daniel Frye, and Christopher Page. *See* Resp't Exs. 111-15.[2]

The PCR court denied relief on all claims and found that counsel was not deficient in advising Petitioner about the terms of the plea agreement. Resp't Ex. 149. The PCR court credited counsel's statement that Dr. Stanulis, a retained psychologist, attended the settlement conference and was present when counsel discussed Petitioner's options and outlined her choices. *Id.* at 2. The PCR court further noted that Petitioner confirmed her satisfaction with counsel during her plea hearing and agreed with the terms of the plea agreement, including the "90 + 90" sentence. *Id.* The PCR court reasoned that the witness statements presented by PCR counsel would have been unavailable, inadmissible, or of marginal relevance and that trial

---

[2] Hall and Page were friends or associates of Petitioner and Cue, and they provided statements regarding Petitioner's reaction when she learned about Holliday's death. Resp't Exs. 112, 115. Frye was Cue's cellmate at the Coos County Jail and recounted what Cue allegedly told him about Holliday's murder. Resp't Ex. 113.

**5 - OPINION AND ORDER**

counsel was not deficient in failing to obtain them. *Id.* at 3. Finally, the PCR court found that Petitioner would not have rejected the 180-month plea agreement based on the evidence presented, and that the plea was knowing and voluntary and a favorable result when compared to the risks of trial. *Id.*

On appeal, Petitioner argued that the PCR court mischaracterized her failure to investigate claim as alleging the failure to obtain witnesses for trial and decided a "different" claim than the one asserted. Resp't Ex. 150 at 19-20. Petitioner did not challenge the PCR court's factual findings or its conclusion that Petitioner failed to show the deficiency of trial counsel or resulting prejudice.

The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Resp't Exs. 152-54. Petitioner now seeks federal habeas relief.

## DISCUSSION

Petitioner raises Four Claims for Relief in her Second Amended Petition. *See generally* Sec. Am. Pet. (ECF No. 65). In Claim One, Petitioner alleges that trial counsel was deficient by: 1) failing to obtain witness statements regarding the underlying facts of Holliday's murder and Petitioner's lack of involvement; and 2) failing to gather all of Petitioner's medical records and obtain a "complete" forensic psychological evaluation of her mental capacity. *Id.* at 4-6. In Claim Two, Petitioner claims that her plea was unknowing and involuntary because trial counsel gave erroneous advice and Petitioner was under the influence of "powerful antipsychotic medications" that affected her ability to understand the plea proceedings. *Id.* at 7-8. In Claim Three, Petitioner alleges that she is actually innocent of the conspiracy offenses because she "never agreed to or facilitated the commission of the felony murder and robbery of Holliday." *Id.*

6 - OPINION AND ORDER

at 8-9. Finally, in Claim Four, Petitioner contends that trial counsel's cumulative errors rendered her criminal proceeding fundamentally unfair. *Id.* at 9-10.

Respondent argues that Petitioner's claims are unexhausted and procedurally barred from federal review because Petitioner failed to fairly present her claims to Oregon's highest court on direct or PCR appeal. *See* 28 U.S.C. § 2254(b); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") (internal quotation marks and citation omitted)l *Coleman v. Thompson*, 501 U.S. 722, 732, 735 n.1 (1991). The record supports Respondent's argument and Petitioner concedes that her claims are unexhausted and procedurally defaulted. Resp't Exs. 105-06, 152; Sec. Am. Pet. at 6, 8; Pet'r Brief at 7, 28; *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) ("A procedural default may be *caused* by a failure to exhaust federal claims in state court.").

A federal court may consider unexhausted and procedurally barred claims only if the petitioner demonstrates cause for the default and actual prejudice, or if the lack of federal review would result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Here, Petitioner argues that PCR counsel's unreasonable failure to assert her federal claims during the PCR proceedings establishes cause and prejudice to excuse their default. Alternatively, Petitioner contends that barring her claims from federal review would result in a "fundamental miscarriage of justice" because she is actually innocent.

    A.  <u>Cause and Prejudice Arising from PCR Counsel's Performance</u>

Generally, the ineffective assistance of post-conviction counsel does not constitute cause to excuse a procedurally defaulted claim. *See Coleman*, 501 U.S at 752-53. However, in

7 - OPINION AND ORDER

*Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court created a narrow exception where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 11. The Court recognized that "as an equitable matter, [] the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id.* at 14. Accordingly, the procedural default of an ineffective assistance of trial counsel (IATC) claim may be excused if the petitioner's post-conviction counsel caused the default by failing to raise a meritorious claim. *Id.* at 9 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").

Oregon's PCR proceedings are the "first designated" proceeding in which a petitioner can challenge the performance of trial counsel. *See State v. Robinson*, 25 Or. App. 675 (1976) (holding that ineffective assistance claims typically must be raised in a PCR proceeding). To meet the remaining requirements of *Martinez*, Petitioner must demonstrate that: 1) PCR counsel's performance was constitutionally deficient under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984); and 2) the underlying IATC claim is "substantial" and has "some merit." *Martinez*, 566 U.S. at 14; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013). A claim has "some merit" if "reasonable jurists" would find it "debatable." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003); *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (en banc).

As a preliminary matter, Petitioner cannot rely on *Martinez* to excuse the default of Claims Two, Three, and Four. *Martinez* applies only to the default of IATC claims, and Claims Two, Three, and Four allege due process violations arising from Petitioner's unknowing and

8 - OPINION AND ORDER

involuntary plea, her actual innocence, and trial counsel's cumulative errors.[3] *See* Sec. Am. Pet. at 7-10; *Davila v. Davis*, 582 U.S. 521, 529-30 (2017) ("*Martinez* provides no support for extending its narrow exception to new categories of procedurally defaulted claims.").

Likewise, Petitioner cannot invoke *Martinez* to excuse the default of Claim One based on trial counsel's failure to investigate the underlying facts of Holliday's murder and obtain witness statements from Page, Hall, Frye, and Gunn. Sec. Am. Pet at 4-5; Pet'r Brief at 13-21. As recounted above, PCR counsel *did* allege an ineffective assistance claim based on trial counsel's failure to investigate and contact potential witnesses. *See* Resp't Ex. 108 at 3-4 (formal PCR petition); Resp't Ex. 109 at 8-9 (PCR trial memorandum); Resp't Ex. 148 at 16-20, 29-34 (counsel's argument during PCR hearing); *see also* Resp't Ex. 149 at 2-3 (PCR judgment rejecting these claims). PCR counsel submitted declarations to support this claim and provided written argument in a trial memorandum and oral argument during the PCR hearing. *See* Exs. 109, 111-15, 148.

The PCR court rejected this claim and PCR appellate counsel did not challenge the PCR court's specific findings on appeal. Resp't Ex. 150 at 15 (arguing that the PCR court "applied an erroneous legal standard in denying petitioner relief, in that it essentially denied petitioner relief on a claim that she had not raised"). Consequently, the default of this claim occurred at the appellate level and cannot be ascribed to initial PCR counsel. Because *Martinez* applies only to

---

[3] Even if Claim Two alleges an underlying IATC claim arising from trial counsel's performance during the plea process, *Martinez* remains unavailable to excuse procedural default. First, PCR counsel asserted an ineffective assistance claim based on counsel's "erroneous" advice, and the default cannot be attributed to PCR counsel's performance. Second, no evidence of record suggests that Petitioner was unable to understand the plea proceedings because of her "medicated" state. Petitioner participated in a judicial settlement conference with counsel and Dr. Stanulis, and no party raised concerns about Petitioner's ability to understand the proceedings. *See, e.g.,* Resp't Exs. 104, 146. In fact, counsel "specifically brought the team and Dr. Stanulis [to the settlement conference] for this purpose – to gauge whether [Petitioner] was able to understand and was stable enough to enter the negotiations." Resp't Ex. 146 at 3.

9 - OPINION AND ORDER

the performance of initial PCR counsel, Petitioner cannot rely on *Martinez* to excuse a procedural default arising from the performance of PCR appellate counsel.[4] *See Martinez*, 566 U.S. at 14, 16 (explaining that the ineffective assistance of post-conviction appellate counsel does not constitute cause to excuse default).

Remaining is the subpart of Claim One alleging that trial counsel performed deficiently by failing to investigate whether Petitioner had the capacity "to form the intent to enter into an agreement to murder Holliday as part of a robbery." Sec. Am. Pet. at 5-6; Pet'r Brief at 6.[5] Petitioner argues that reasonable trial counsel would have sought Petitioner's medical and psychological records and retained the services of a "competent psychologist" to review those records and conduct a "thorough evaluation" of Petitioner's mental capacity. Pet'r Brief at 21-24. Petitioner contends that if counsel had undertaken this investigation and evaluation, Petitioner "would have known that she had a viable defense at trial and would not have taken the plea offer." *Id.* at 33.

To support this claim, Petitioner relies on a psychological evaluation conducted in 2021. *See* Pet'r Ex. 206. In it, Petitioner's evaluators explain that they were "asked to form an opinion as to [Petitioner's] capacity to have entered into a conspiracy to commit robbery and murder and whether she was able to reasonably predict her co-defendant's behavior and ascertain the risk of violence in the situation." *Id.* at 34. Based on Petitioner's diagnoses and her mental status, the evaluators opine that Petitioner "did not possess the ability to form the intent to enter into a

---

[4] Petitioner submitted extra-record exhibits to support counsel's alleged lack of factual investigation. *See* Pet'r Exs. 201-02, 204-05, 207, 211-13. Because *Martinez* does not excuse the default of this claim, I need not decide whether these exhibits are properly before the Court.

[5] Respondent argues that the forensic evaluation claim is untimely because Petitioner did not raise it until March 2022, well beyond the one-year statute of limitations, and it does not relate back to her original Petition. Because I find that the claim is procedurally defaulted, I do not address its timeliness.

10 - OPINION AND ORDER

conspiracy to commit robbery and murder and that she was not able to reasonably predict her co-defendant's behavior and ascertain the risk of violence in the situation." *Id.* at 11. While the evaluators recognize that "violence was very clearly a part of Ms. Place's day-to-day life," they nonetheless find that Petitioner's "ongoing mental health problems . . . impeded her ability to anticipate or exercise any influence over the behavior of two men who had ongoing patterns of control and abuse in their relationships with her." *Id.* The evaluators conclude, "It is our opinion that Ms. Place's serious mental health diagnoses, which intersect and significantly impact the way that she perceives social interactions, substantially impaired her ability to form intent and predict her co-defendant's behavior and ascertain the risk of violence in the instant offense." *Id.* at 34. Petitioner argues that the 2021 evaluation establishes that she did not possess the requisite intent to enter into a conspiracy to rob or murder Holliday. *See* Pet'r Brief at 22-25.

Respondent counters that Petitioner's 2021 evaluation is inadmissible in this action because it was not presented during her PCR proceedings. *See* 28 U.S.C. § 2254(e)(2) (generally barring the consideration of new evidence in a habeas action if the petitioner "failed to develop the factual basis of a claim in State court"). Because Petitioner has no other basis to support her IATC claim, Respondent maintains that she cannot show that the claim is "substantial" under *Martinez*.

The standard to expand the state court record in a federal habeas action is a high bar to overcome. Typically, a federal court cannot consider newly discovered evidence unless the petitioner shows that the evidence "could not have been previously discovered through the exercise of due diligence" and the evidence demonstrates, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted the petitioner. *Id.* §§ 2254(e)(2)(A)(ii) and (B); *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). Because the facts underlying Petitioner's IATC

11 - OPINION AND ORDER

claim were not developed in state court, this Court cannot consider Petitioner's 2021 evaluation "to assess cause and prejudice under *Martinez*" unless she meets the "stringent requirements" of § 2254(e)(2). *Ramirez*, 596 U.S. at 389.

Petitioner argues that she did not present the factual basis of her forensic evaluation claim in her PCR proceeding because PCR counsel negligently failed to obtain and present it. However, *Ramirez* makes clear that the "due diligence" requirement § 2254(e)(2) applies even if PCR counsel negligently failed to develop the state-court record. *Id.* at 384 (holding that "a prisoner is 'at fault' even when state postconviction counsel is negligent"). Thus, PCR counsel's alleged negligence cannot excuse Petitioner's failure to develop the factual basis of her IATC claim to allow review of the 2021 evaluation.

Petitioner also argues that she was unable to discover the factual predicate of "the *mens rea* aspect of her claim" because the Coos County Jail told Petitioner that "they had destroyed her medical and psychological records." Pet'r Reply at 14 (ECF No. 99).[6] However, it was 2019 when the Coos County Jail mistakenly informed Petitioner that her records had been destroyed, and Petitioner presents no evidence to suggest that her records were unavailable during her criminal or PCR proceeding. *See* Ryan Decl. ¶ 5 (ECF No. 28). Petitioner's habeas counsel eventually obtained the records in November of 2019 and they presumably could have been discovered several years earlier. Pet'r Reply at 8-9; *see also* Ryan Decl. ¶ 5. Consequently, Petitioner fails to show that the 2021 evaluation could not have been obtained during her state court proceedings, and it is not admissible to determine cause and prejudice to excuse the procedural default of Petitioner's underlying IATC claim.

---

[6] The Coos County Jail eventually located Petitioner's medical records and they were provided to the psychologists who evaluated Petitioner in 2021. *See* Pet'r Ex. 206 at 13 (listing Conmed Healthcare Management records from April 2011 to November 2011).

12 - OPINION AND ORDER

Regardless, with or without the 2021 evaluation, Petitioner fails to show that trial "counsel's performance was deficient" and "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Notably, Petitioner agreed to plead no contest to the Conspiracy charges as the result of a negotiated settlement. Resp't Exs. 103-04. Consequently, trial counsel cannot reasonably have been expected to "investigate" negotiated charges in the same manner as charges alleged in an indictment and pursued to trial. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

The record reflects that trial counsel in fact retained Dr. Stanulis to evaluate Petitioner and assist in the case, which included Dr. Stanulis's presence during plea negotiations. No evidence of record suggests that Dr. Stanulis opined or suggested that Petitioner's mental diagnoses rendered her unable to form the intent to commit the charged offenses. *See, e.g.,* Resp't Ex. 146. Investigative reports described Petitioner's history of drug dealing, her use of violence to collect drug debts or otherwise intimidate her adversaries, her control over members of her "crew," and her involvement in Holliday's robbery and murder. Resp't Ex. 118 at 86-89, 97-110. This record would not lead reasonable counsel to question her client's mental capacity to commit criminal offenses.

Petitioner also fails show prejudice, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because she pled no contest, Petitioner must show that "there is a reasonable probability that," but for counsel's deficient performance, Petitioner would have rejected the plea agreement and "insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59

13 - OPINION AND ORDER

(1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (noting that "a defendant must show the outcome of the plea process would have been different with competent advice").

Petitioner maintains that she would have rejected the plea if counsel had obtained a forensic evaluation like the one conducted in 2021, because such an evaluation would have revealed that Petitioner lacked the mental capacity to understand and agree, based on the statements and conduct of Cue and Gunn, that Holliday would be robbed and killed. Pet'r Brief at 34; Pet'r Ex. 206. However, had Petitioner rejected the plea, she would not have gone to trial on the negotiated conspiracy charges; she would have gone to trial on the charged offenses of Felony Murder and Robbery in the First Degree and faced a sentence of at least twenty-five years. *See former* Or. Rev. Stat. §§ 163.115(1),(5); 164.415 (2011). Further, to sustain charges of Felony Murder and Robbery in the First Degree, the State would not have been required to prove that Petitioner intended or agreed with Gunn and Cue that Holliday would be murdered. Rather, the State would have had to prove that Petitioner committed or attempted to commit Robbery in the First Degree and, in the course of and in furtherance of that crime, Holliday was killed. Or. Rev. Stat. §§ 163.115(1)(b)(G).[7]

In other words, a forensic evaluation regarding Petitioner's legal culpability for conspiracy offenses would have had little, if any, relevance to the charges she would have faced at trial. Given that Petitioner faced a 25-year mandatory minimum if convicted of Felony Murder and her plea agreement of fifteen years ensured a considerably lesser sentence, it is not

---

[7] At the time of Petitioner's offense, a person was guilty of Felony Murder if the person committed or attempted to commit certain enumerated crimes, including Robbery in the First Degree, and "in the course of and in furtherance of" that crime "the person, or another participant if there be any, cause[d] the death of a person other than one of the participants." *Former* Or. Rev. Stat. § 163.115(1)(b)(G) (2011). Elements of Robbery in the First Degree include the use or attempted use of a "dangerous weapon" and the use of force while attempting or attempting to commit theft. *Id.* § 164.415.

14 - OPINION AND ORDER

conceivable that Petitioner would have rejected the plea had counsel obtained an evaluation with no exculpatory value.

Because Petitioner's underlying IATC claim lacks merit, she also fails to show that PCR counsel was deficient by failing to assert a non-meritorious claim. *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) (holding that counsel is not ineffective for failing to raise claims that lack merit); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").[8]

In sum, Petitioner fails to establish cause and prejudice under *Martinez* to excuse the procedural default of her claims.

B. <u>Fundamental Miscarriage of Justice and Actual Innocence</u>

Alternatively, Petitioner argues that her defaulted claims are reviewable under the "fundamental miscarriage of justice" exception because she is actually innocent of the offenses. *Schlup v. Delo*, 513 U.S 298, 314-15 (1995); Pet'r Brief at 1 (asserting that Petitioner "is factually and legally innocent of the conspiracy crimes").

A compelling claim of innocence opens a procedural "gateway through which a habeas petitioner must pass to have [an] otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S at 315 (citation omitted). To establish actual innocence, a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a

---

[8] Petitioner also relies on the fact that her PCR counsel "had previously been disciplined for neglecting other post-conviction cases and was, at the time of the appointment, embroiled in a new disciplinary action by the Oregon State Bar due to her neglect of two more of these cases." Pet'r Brief at 13; *see also* Pet'r Exs. 209, 214-15 (records from a 2013 disciplinary hearing involving Petitioner's PCR counsel). Regardless, Petitioner must establish that PCR counsel's performance was deficient in her PCR proceeding. She fails to do so.

15 - OPINION AND ORDER

reasonable doubt." *Id.* at 324, 327; *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011). "New" evidence under *Schlup* need not be newly discovered. *Larsen v. Soto*, 742 F.3d 1083, 1093-94 (9th Cir. 2013). Rather, "*Schlup* makes plain that the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). Ultimately, the "*Schlup* standard is demanding and permits review only in the 'extraordinary' case." *Id.* (quoting *Schlup*, 513 U.S. at 327); *see also Larsen*, 742 F.3d at 1096 (noting that most cases satisfying *Schlup* have "typically involved dramatic new evidence of innocence").

Petitioner claims that she is "actually innocent of the conspiracy crimes" because she "lacked the requisite mental state" to enter into an agreement to commit robbery and murder. Pet'r Brief at 1, 27, 48. Petitioner argues that the State's factual basis to support her plea "contain[ed] false statements" and failed "to satisfy the necessary elements of the crimes of conspiracy," i.e., that "there was an agreement to commit the crimes of robbery and murder." *Id.* at 41-42. Petitioner maintains that, at minimum, she is actually innocent of Conspiracy to Commit Murder because "there was no causal connection between the underlying robbery and Holliday's murder." *Id.* at 27.

Petitioner's reliance on the negotiated conspiracy offenses again misses the mark. To establish actual innocence, Petitioner must show that she is "factually innocent of the offense for which the petitioner personally faced conviction." *United States v. Ovsepian*, 113 F.4th 1193, 1203 (9th Cir. 2024); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) (stating that "'actual innocence' means factual innocence, not mere legal insufficiency"). In "cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's

16 - OPINION AND ORDER

showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624 (citations and footnote omitted). "Absent the parties' bargained-for outcome, the petitioner faced possible conviction of the more serious charges." *Ovsepian*, 113 F.4th at 1204. Thus, Petitioner must show that she is actually innocent of Felony Murder and Robbery in the First Degree, and the evidence does not support her claim.

Petitioner's newly-presented evidence includes: 1) the 2021 psychological evaluation of Petitioner; 2) email correspondence between Petitioner's trial counsel and the presiding settlement judge; 3) a letter from Dr. Stanulis to trial counsel regarding Petitioner's competency evaluation; 4) a declaration from Petitioner's mother regarding the lack of communication with trial and PCR counsel; 5) an "Oregon DOJ Powerpoint" of Cue's criminal convictions; 6) a settlement letter from trial counsel to the presiding settlement judge; 7) a declaration from Petitioner's current husband regarding PCR counsel; 8) email correspondence between Petitioner's counsel and Gunn's defense attorney regarding unauthorized communications with Petitioner; and 9) an opinion letter denying a motion to disqualify Petitioner's trial counsel. Pet'r Exs. 201-04, 206-08, 211-13. None of these exhibits include first-hand accounts of Holliday's murder or the extent of Petitioner's involvement, and they have no bearing on Petitioner's factual innocence.

Petitioner also cites evidence presented during Petitioner's PCR proceeding, including declarations provided by Gunn, Tyre Hall, Daniel Frye, and Christopher Page. Hall and Page provided statements describing Petitioner's distraught reaction when told of Holliday's death. Resp't Exs. 112, 115. Frye was Cue's cellmate at the Coos County Jail and recounted that Cue said "there was no plan to kill Ron it just happened," that "it was a last minute decision and the

17 - OPINION AND ORDER

reason they shot him was because Ron was a sex offender," and "Angel was not involved and nothing was planned." Resp't Ex. 113. Similarly, Gunn's declaration states:

> A week before the incident Ron had ripped me and Angel off on a drug deal, Ron had shorted us on about a hundred bucks of dope. I told Angel that I would settle up on the difference with Ron and their money. On the day of the incident Jeff and I went to collect the money from Ron. I was initially going to walk to Ron's but Jeff kept insisting on giving me a ride. Angle did not know anything about my intentions to assault or kill Ron. She was not involved in any discussions, planning and didn't know anything about my plans.

Resp't Ex. 114.

These declarations do not meet the "exacting" standard of *Schlup*. *Lee*, 653 F.3d at 938. Hall's and Page's declarations provide no information regarding the factual circumstances of Holliday's murder, and Gunn's declaration is contradicted by overwhelming evidence that he and Cue murdered Holliday while collecting a debt at Petitioner's direction. *E.g.,* Resp't Ex. 79, 104, 118. Investigative reports also contain highly incriminating evidence regarding Petitioner's involvement in Holliday's robbery and murder and the commission of other uncharged offenses. *See* Resp't Ex. 118 at 37-38, 40-41, 44, 67-69, 71-79, 82-89, 97-99, 101-11; *see also* Resp't Ex. 140; *Bousley v. United States*, 523 U.S. 614, 624 (1998) (when responding to a claim of actual innocence, "the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision"). Considered as a whole, the evidence presented does not make it likely "that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S at 327. Petitioner fails to establish actual innocence to proceed through the *Schlup* gateway and excuse the procedural default of her claims.

18 - **OPINION AND ORDER**

For the same reason, Petitioner cannot sustain a "stand alone" claim of actual innocence, even if this claim was cognizable in a federal habeas action. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (acknowledging that it is an open question whether stand-alone claims of actual innocence are cognizable on federal habeas review). The "threshold" for a freestanding claim of actual innocence is "'extraordinarily high'" and "would have to be 'truly persuasive.'" *Carriger v. Stewart,* 132 F.3d 463, 476 (9th Cir. 1997) (quoting *Herrera,* 506 U.S. at 417). A petitioner must "go beyond demonstrating doubt" about guilt and must "affirmatively" prove that the petitioner "is probably innocent." *Id*. For the reasons explained, the evidence does not show that Petitioner is "probably innocent."

Accordingly, Petitioner's claims are barred from federal review through procedural default and she is not entitled to federal habeas relief.

## CONCLUSION

The Second Amended Petition for Writ of Habeas Corpus (ECF No. 65) is DENIED. A Certificate of Appealability is DENIED on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 5th day of March, 2025.

s/ Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge